# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSEPH LEMOINE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-4967** |
| **DARREL VANNOY, WARDEN** | **SECTION "I"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and Procedural Background

The petitioner, Joseph Lemoine ("Lemoine"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On November 23, 2009, Lemoine was indicted by a Washington Parish Grand Jury for the aggravated rape of his six year old niece, B.Z.[3] Lemoine initially entered a plea of not guilty on January 28, 2010.[4]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

[3] St. Rec. Vol. 1 of 6, Indictment, 11/23/09 (as amended 3/12/12). Louisiana law requires the use of initials to identify minors and victims of sex crimes, and this Court will abide by that preference. La. Rev. Stat. Ann. § 46:1844W.

[4] St. Rec. Vol. 1 of 6, Minute Entry, 1/28/10.

The record reflects that, in February of 2009, six-year-old B.Z. told family friends that Lemoine, her uncle, orally raped her.[5]  Her mother reported the matter to the police.  Washington Parish Sheriff's Detective Anthony Stubbs arranged for B.Z. to be interviewed by Jo Beth Rickels, a forensic interviewer at the Children's Advocacy Center ("CAC").  During the videotaped interview, B.Z. told Rickels that Lemoine took her behind a barn at her grandmother's house in Mount Hermon, Louisiana, and "licked her vagina" and that she "had to lick his penis."

Lemoine was tried before a jury on March 12 through 14, 2012, and was found guilty as charged.[6]  At a hearing held on April 2, 2012, the Trial Court denied Lemoine's motions for new trial (including suppression of the CAC interview) and post-verdict judgment of acquittal.[7]  The Court then sentenced Lemoine to serve life in prison at hard labor without benefit of parole, probation, or suspension of sentence.

On direct appeal to the Louisiana First Circuit Court of Appeal, Lemoine's appointed counsel argued that it was error for the Trial Court to deny the motion to suppress Lemoine's pre-arrest confession made while he was under the influence of alcohol.[8]  Lemoine was granted leave to file a supplemental brief, but failed to do so.[9]

---

[5]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal.  *State v. Lemoine*, No. 2013-KA-0141, 2013 WL 5915144, at *1 (La. App. 1st Cir. 2013); St. Rec. Vol. 1 of 6, 1st Cir. Opinion, 2013-KA-0141, pp. 2-3, 11/1/13.

[6]St. Rec. Vol. 1 of 6, Trial Minutes, 3/12/12; Trial Minutes, 3/13/14; Trial Minutes, 3/14/13; Jury Verdict Form, 3/14/12; St. Rec. Vol. 3 of 6, Trial Transcript, 3/12/12; St. Rec. Vol. 4 of 6, Trial Transcript, 3/13/12; St. Rec. Vol. 5 of 6, Trial Transcript, 3/14/12.

[7]St. Rec. Vol. 1 of 6, Sentencing Minutes, 4/2/12; Motion for New Trial, 3/18/12; Motion for Post-Verdict Judgment of Acquittal, 3/18/12; St. Rec. Vol. 5 of 6, Sentencing Transcript, 2/1/12.

[8]St. Rec. Vol. 5 of 6, Appeal Brief, 2013-KA-0141, 5/24/13.

[9]St. Rec. Vol. 5 of 6, 1st Cir. Order, 2013-KA-0141, 9/3/13.

On November 1, 2013, the Louisiana First Circuit affirmed Lemoine's conviction finding the sole issue to be meritless.[10]  The Louisiana Supreme Court thereafter denied Lemoine's related writ application without stated reasons on April 25, 2014.[11]

Lemoine's conviction was final under federal law ninety (90) days later, on July 24, 2014, when he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the U.S. Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

On June 26, 2015, Lemoine signed and submitted an application for post-conviction relief to the Trial Court asserting the following grounds for relief:[12] (1) he was denied full review on appeal when the court reporter failed to transcribe sidebar conferences held during trial; (2) the evidence was insufficient to support the verdict; (3) he was denied effective assistance of counsel when his first appointed counsel failed to investigate the accuracy of the victim's description of a sore on his genitalia; (4) the state relied on the testimony of an unsubstantiated expert to overcome the factually insufficiency; (5) he was denied due process by the State's intentional misconduct during closing arguments; and (6) the cumulative effect of the errors denied him a fair trial.

The Trial Court denied relief on September 21, 2015.[13]  The Court held that Lemoine's claims were procedurally barred from post-conviction review for the inexcusable failure to assert

---

[10]*Lemoine*, 2013 WL 5915144, at *1; St. Rec. Vol. 1 of 6, 1st Cir. Opinion, 2013-KA-0141, 11/1/13.

[11]*State v. Lemoine*, 138 So.3d 644 (La. 2014); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2013-KO-2740, 4/25/14; La. S. Ct. Writ Application, 13-KO-2740, 11/26/13 (dated 11/20/13); St. Rec. Vol. 1 of 6, La. S. Ct. Letter, 2013-KO-2740, 11/26/13.

[12]St. Rec. Vol. 1 of 6, Application for Post-Conviction Relief, 7/6/15 (dated 6/26/15).

[13]St. Rec. Vol. 1 of 6, Trial Court Judgment, 9/21/15.

the claims on direct appeal. *See* La. Code Crim. P. art. 930.4(C). Alternatively, the Court found that the claims asserted by Lemoine were meritless.

On October 15, 2015, Lemoine sought review of this ruling in the Louisiana First Circuit only as to five of his claims (numbers two through six in the post-conviction application).[14] On December 18, 2015, the Court denied the application without stated reasons.[15]

On May 1, 2017, the Louisiana Supreme Court denied Lemoine's subsequent writ application in which he asserted only four of his post-conviction claims (numbers two through five in the post-conviction application).[16] The Court held that Lemoine failed to establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), and failed to satisfy his burden of proof as to the others, adopting the state trial court's September 21, 2015, reasons.

## II.    **Federal Habeas Petition**

On May 15, 2017, the clerk of this Court filed Lemoine's petition for federal habeas corpus relief in which he asserted the following grounds for relief:[17] (1) the state trial court erred in denying the motion to suppress petitioner's confession; (2) the State failed to present sufficient evidence to support the verdict; (3) he received ineffective assistance of counsel when his first counsel failed to investigate the victim's description of a sore on his genitalia; (4) the State presented improper "expert" testimony; and (5) the State engaged in prosecutorial misconduct during rebuttal closing argument.

---

[14]St. Rec. Vol. 6 of 6, 4th Cir. Writ Application, 2015-KW-1664, 10/20/15 (dated 10/15/15).

[15]St. Rec. Vol. 6 of 6, 4th Cir. Order, 2015-KW-1664, 12/18/15.

[16]*State ex rel. Lemoine v. State*, 219 So.3d 81 (La. 2017); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2016-KH-0031, 5/1/17; La. S. Ct. Writ Application, 16-KH-31, 1/7/16 (dated 12/29/15).

[17]Rec. Doc. No. 1.

The State filed a response in opposition to the petition asserting that Lemoine's claims are meritless and that he is not entitled to relief.[18]  In his reply to the State's response, Lemoine reasserted his arguments in support of his claims.[19]

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[20] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on May 15, 2017.[21]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State does not assert and the record does not establish these defenses apply to Lemoine's petition.  The Court, therefore, will address the substance of Lemoine's claims.[22]

---

[18]Rec. Doc. No. 11.

[19]Rec. Doc. No. 12.  Lemoine also argued that the State did not address his ineffective assistance and sufficiency of the evidence claims, and he was entitled to relief on those claims.  His suggestion is factually incorrect.  The State's opposition without doubt addresses the lack of merit as to all of Lemoine's asserted claims.

[20]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[21]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Lemoine's petition on May 15, 2017, and the case was opened upon payment of the filing fee on June 12, 2017.  The official stamp of the prison indicates that Lemoine signed and gave his pleadings to prison officials on May 15, 2017, to email to this Court.  The payment of the filing fee did not alter the application of the federal mailbox rule to his *pro se* petition.  *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

[22]The Court suggests that the incorporation of the state trial court's reasons by the Louisiana Supreme Court

## IV.    **Standards of a Merits Review**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.  *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court must

---

may have carried with it the invocation of the procedural bar first imposed by the lower court before the merits review. Furthermore, the State actually indicates in its opposition that "The respondent <u>does allege</u> any of the petitioner's claims to be procedurally defaulted."  Rec. Doc. No. 11, p. 6, ¶3.  Despite this, the State made no further mention of a procedural bar to Lemoine's claims in its brief.  Nevertheless, the court will <u>not</u> *sua sponte* raise the procedural bar because it was not specifically invoked or imposed by the Louisiana Supreme Court.

extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id*. "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641

(quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

In addition, review under § 2254(d)(1) is limited to the record before the state court that

adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.    Suppression of the Confession (Claim No. 1)

Lemoine alleges that the state trial court erred when it denied the defense's motion to

suppress his inculpatory statement made to police while he was intoxicated. The State contends

that Lemoine is not entitled to relief because the state courts' denial of relief was not contrary to

or an unreasonable application of federal law.

On June 4, 2010, Lemoine's original appointed counsel filed a motion to suppress his

statements made to police offering no specific reasons therefor. The Trial Court held an

evidentiary hearing on the motion on March 12, 2012, prior to trial, at which time Lemoine was

represented by different appointed counsel.[23] The Court heard testimony from the investigating

officer, Detective Anthony Stubbs, as well as Lemoine related to the two statements made by

Lemoine on February 12, 2009, and February 24, 2009. Detective Stubbs testified that Lemoine

did not appear to be intoxicated at either interview, nor did he smell of alcohol during the second

interview (during which Lemoine claimed he had been drinking heavily before he arrived). He

recalled that Lemoine claimed during the interview that he believed himself to be an alcoholic, but

he did not appear intoxicated at that time, nor did he slur his speech. Lemoine testified at the

hearing that he drank prior to both interviews, but more heavily before the second interview. He

also conceded that he signed the waiver of rights forms, although he claimed not to specifically

remember what was read to him. He also conceded that he was aware of what he was accused of

and was being questioned about, namely the aggravated rape or sexual assault of his niece. He

---

[23]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 101-124, 3/12/12.

further testified that he knew what he was saying during the second interview. Following the hearing, the Trial Court denied the motion citing no proof that Lemoine was impaired in a manner that would have rendered his statements involuntary.[24]

On direct appeal, the Louisiana First Circuit reviewed the testimony from the hearing and trial, where Lemoine again testified about his condition before and during both interviews. In doing so, the Court resolved, as did the trial court, that Lemoine was not so intoxicated to have impaired his comprehension of the his acts and the consequences of his statements, and that he was advised of his rights, knowingly and intelligently waived those rights, and was not coerced by the officers into giving his statements. This was the last reasoned state court opinion on the issue. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

The admissibility of a confession is a mixed question of law and fact. *Miller v. Fenton*, 474 U.S. 104, 112 (1985); *ShisInday v. Quarterman*, 511 F.3d 514, 522 (5th Cir. 2007) (citing *Miller*, 474 U.S. at 112). A federal court on habeas review must respect the state court's determination of voluntariness as long as it was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); *Barnes v. Johnson*, 160 F.3d 218, 222 (5th Cir. 1998). In doing so, a federal habeas court must afford a presumption of correctness to state courts' findings of fact if they are fairly supported by the record. *Miller*, 474 U.S. at 117.

The Supreme Court recognizes two inquiries to determine whether an accused has voluntarily and knowingly waived his Fifth Amendment privilege against self-incrimination. *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Soffar v. Cockrell*, 300 F.3d 588, 592 (5th Cir. 2002). First, waiver of the right must be voluntary and not the product of intimidation, coercion or

---

[24]*Id*., at p. 124.

deception.  *Moran*, 475 U.S. at 421.  Second, the waiver or relinquishment must be made with full awareness of the nature of the right being waived.  *Id*.  In making these inquiries, the court must consider the "totality of all the surrounding circumstances - both the characteristics of the accused and the details of the interrogation."  *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

In assessing voluntariness, "trickery or deceit is only prohibited to the extent it deprives the suspect 'of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.'"  *Soffar*, 300 F.3d at 596 (quoting *Moran*, 475 U.S. at 424).  Therefore, a finding of coercive police conduct is a necessary prerequisite to a conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession.  *Carter v. Johnson*, 131 F.3d 452, 462 (5th Cir. 1997) (citing *Colorado v. Connelly*, 479 U.S. 157, 163-67 (1986)).

Determining whether officers engaged in coercive tactics to elicit a confession is a question of fact, and the state court's factual findings are entitled to deference when supported by the record.  *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993); *Self v. Collins*, 973 F.2d 1198, 1204 (5th Cir. 1992); *see also*, *Miller*, 474 U.S. at 112 (noting that subsidiary questions such as whether the police engaged in coercive tactics are afforded the presumption of correctness).  Thus, federal judges are to respect credibility determinations made by the state court trier of fact.  *Pemberton*, 991 F.2d at 1225 (citing *Sumner v. Mata*, 455 U.S. 591, 597 (1982)).  However, if the underlying facts as determined by the state court indicate the presence of some coercive tactic, the impact that factor had on the voluntariness of the confession is a matter for independent federal determination and is ultimately a legal determination.  *Miller*, 474 U.S. at 117; *ShisInday*, 511 F.3d at 522.

Even if the confession is deemed involuntary under these standards, the Supreme Court has held that the admission of an involuntary confession is a trial error subject to harmless error

analysis. *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991). Under these standards, to grant federal habeas relief, the trial error must have a substantial and injurious effect or influence in determining the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Therefore, even if this court were to find that petitioner's Fifth Amendment rights were violated, the Court would also consider whether use of the confession at trial was harmless in determining the verdict. *Hopkins v. Cockrell*, 325 F.3d 579, 583 (5th Cir. 2003).

In Lemoine's case, consistent with *Jackson v. Denno*, 378 U.S. 368 (1964), the state trial court conducted a full evidentiary hearing on the motion to suppress the confession and the admissibility of the inculpatory statement recorded by the officers. The state trial court received testimony from one of the officers and Lemoine, as well as evidence, including the signed waiver of rights forms. Assessing this evidence and the totality of the circumstances surrounding his statements, the state courts concluded that there were no facts to support Lemoine's contention that his statements were coerced or that he was intoxicated in a manner to render his statements involuntary.

On federal habeas review, this court must presume that the factual determinations made by the state courts were correct, including the finding that Lemoine was properly read his rights, waived those rights before he was questioned, and voluntarily made the statements at issue now. Lemoine has not established that the denial of relief on this issue was contrary to, or an unreasonable application of, Supreme Court law. He has pointed to nothing in the record, and the Court can find nothing, to establish that he was impaired when he waived his rights or that there was unconstitutional deceit or coercion by the police which led to his voluntary and inculpatory statement. Lemoine is not entitled to relief on this issue.

## VI.    <u>Sufficiency of the Evidence (Claim No. 2)</u>

Lemoine claims that the State failed to present sufficient evidence to support the verdict because the State failed to produce any physical evidence of his guilt.  He further argues that the victim's testimony was not corroborated by any evidence.  The State contends that the denial of relief was not contrary to or an unreasonable application of federal law.

On post-conviction review of this issue, the Trial Court denied relief noting that the testimony of the victim was sufficient to establish that there had been anal, oral, and vaginal sexual intercourse with the minor child under the age of 13.  These findings were incorporated by reference in the Louisiana Supreme Court's opinion denying relief on Lemoine's subsequent writ application.  *See Ylst*, 501 U.S. at 802.

Claims of insufficient evidence present a mixed question of law and fact.  *Davila v. Davis*, 650 F. App'x 860, 866 (5th Cir. 2016); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995).  The Court must therefore give deference to the state courts' findings unless the decision was contrary to, or involved an unreasonable application of Supreme Court law.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011).  Louisiana law allows for a crime to be proven by both direct and circumstantial evidence.

In Louisiana, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. Ann. § 15:438. However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead must apply the *Jackson* and AEDPA standards of review. *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)). To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So.2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So.2d 204, 209 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); *accord Williams*, 693 So.2d at 209. The appropriate standard for this Court on habeas review remains *Jackson*.

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324) (*Jackson* standard relies "upon the record evidence adduced at the trial."). The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see*

*also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").    A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995) (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)).    All credibility choices and conflicting inferences must be resolved in favor of the verdict.    *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"    *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).    Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.    *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

In this case, Lemoine was convicted of the aggravated rape of his six year old niece in violation of La. Rev. Stat. Ann. § 14:42.    At the time, to prove aggravated rape (now designated first degree rape), the State had to establish beyond a reasonable doubt that the defendant engaged in anal, oral, or vaginal intercourse with the victim, and the victim was under the age of thirteen at the time of the offense.    *State v. Lewis*, 195 So.3d 495, 500 (La. App. 2d Cir. 2016).    When the rape involves vaginal or anal intercourse, any sexual penetration, however slight, is sufficient to complete the crime.    La. Rev. Stat. Ann. § 14:41(B).    Oral sexual intercourse is defined in pertinent part as the "touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender" or as the "touching the anus or genitals of the offender by the victim using the mouth or tongue of the victim."    La. Rev. Stat. Ann. § 14:41(C)(1),(2).

14

Furthermore, in Louisiana, the testimony of a sexual assault victim is sufficient to support a requisite factual finding. *State v. Demery*, 165 So.3d 1175, 1180 (La. App. 2d Cir. 2015). The victim's testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. *State v. Ponsell*, 766 So.2d 678, 682 (La. App. 2d Cir. 2000).

As resolved by the state courts, the victim provided testimony to establish the requisite elements of aggravated rape. It was established at trial that B.Z. was nine years old at the time of trial, making her six years old when the incidents occurred.[25] B.Z. testified that the first incident occurred behind the barn at her grandmother's home when Lemoine touched her tongue with his penis, which she called his "boy private."[26] She stated that he unbuttoned and unzipped his pants and made her lick his penis with her tongue until a sour yellow "pee" came out of it.[27] After this, he told her to pull her pants down and he licked her vagina, which she called her "girl private," with his tongue for some amount of time.[28] She also told the forensic interviewer that Lemoine "dug" with his hands inside of her vagina.[29] He told her not to tell anyone what happened or she would be in trouble.[30]

B.Z. also testified that, on another occasion, Lemoine made his penis touch her butt through her pants.[31] This time, Lemoine had her sit on his lap. He unbuttoned and unzipped his pants and

---

[25]St. Rec. Vol. 4 of 6, Trial Transcript, p. 369 (B.Z.), 3/13/12.

[26]*Id*., p. 380 (B.Z.).

[27]*Id*., pp. 381-82 (B.Z.).

[28]*Id*., pp. 383-84 (B.Z.).

[29]*Id*., p. 407 (Jo Beth Rickels).

[30]*Id*., p. 384 (B.Z.).

[31]*Id*., p. 384 (B.Z.).

left his penis out touching her butt through her clothes.[32]  She stated that he stopped when two female relatives were getting close enough to possibly see what he was doing.  He again told B.Z. not to tell anyone or she would get in trouble.[33]

The jury, therefore, heard sufficient evidence to establish that Lemoine had oral and/or vaginal intercourse with B.Z. when she was six years old.  Thus, as found by the state courts, and considering the facts in a light most favorable to the prosecution, there was sufficient evidence to convict Lemoine, even if that verdict was based on the testimony of the victim alone.

Lemoine has failed to establish that there was insufficient evidence to prove his guilt.  The state courts' denial of relief was not contrary to, or an unreasonable application of, Supreme Court law.  He is not entitled to relief on this claim.

## VII.  <u>Effective Assistance of Counsel (Claim No. 3)</u>

Lemoine alleges that he was denied effective assistance of counsel when his first appointed attorney failed to investigate the validity of B.Z.'s description that he had a bleeding bump on his penis when he made her lick it.  Lemoine claims that, had his counsel had him examined and had pictures taken, it would have shown that he had no bleeding bump on his penis after his arrest.  The State contends that the denial of relief by the state courts was not contrary to or an unreasonable application of federal law.

On post-conviction review, the state trial court resolved that counsel did not perform deficiently or prejudicially in light of the long passage of time between the rape and Lemoine's arrest, noting that any sore could have healed over time.  In adopting this reasoning, the Louisiana

---

[32]*Id.*, p. 385 (B.Z.).

[33]*Id.*, pp. 385-86 (B.Z.).

Supreme Court found that Lemoine failed to meet his burden under *Strickland*. This was the last reasoned opinion on the issue. *See Ylst*, 501 U.S. at 802.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). Thus, under the AEDPA, the question before this Court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, relied upon by the state courts, is the appropriate standard for judging the performance of counsel. In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must

"judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total

context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence 'under prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Pinholster*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

Lemoine's claim addresses the performance of his first appointed counsel, who was replaced by Lemoine's ultimate trial counsel on or before December 8, 2011.[34]  Lemoine

---

[34] St. Rec. Vol. 1 of 6, Minute Entry, 12/8/11 (marking the first record appearance by Lemoine's second appointed trial counsel).

specifically asserts that his first counsel was ineffective when she failed to investigate the issue of whether he had a genital sore when the rape occurred.

When a habeas petitioner alleges a failure of his counsel to investigate, he "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted). In other words, a petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown. *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. *See Moawad*, 143 F.3d at 948; *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting Report and Recommendation). Lemoine has failed to establish that any further investigation was needed or that the investigation would have uncovered exculpatory evidence as he contends.

Lemoine claims that, had his counsel had him examined, she could have challenged the identification by showing that he did not have a bleeding bump on his penis. Lemoine limits his discussion to his physical state at a time <u>after</u> his arrest and during the initial pretrial representation by his counsel. His arguments stops well short of claiming that he never had a bleeding bump, only that he did not have one when his counsel could have had him examined during her pretrial investigation.

The record reflects that the investigation into B.Z.'s allegations began in early February of 2009. Lemoine was first arrested after his interview on February 24, 2009, and according to the

respondent, was released on bond on March 5, 2009.[35]  Lemoine was not returned to custody until his arrest on December 9, 2010, following the grand jury indictment on November 18, 2009.[36] This timeline shows the passage of a significant amount of time between the revelation of the sexual abuse and the pretrial process for Lemoine's charge.  As determined by the state courts, by that time any such bleeding bump easily could have healed and certainly would not have been indicative that he never had such a bump.

Furthermore, the bump was not the only identification evidence given by B.Z., who clearly identified her "Uncle Joey" as the man who raped her, fondled her, and had her sit on his penis. Lemoine also confessed to police that he had a sexual encounter with B.Z. in a tent.  Furthermore, as previously discussed, the evidence at trial was more than sufficient to prove that Lemoine committed the aggravated rape of his six year old niece, even if he had no bleeding bump on his penis after his arrest.

In addition, the record shows that Lemoine's second appointed counsel moved for the suppression of B.Z.'s entire recorded interview with the forensic interviewer at CAC.  That motion was denied by the Trial Court prior to trial.  Thus, there is no reason to find that, had Lemoine's first counsel moved to suppress B.Z.'s interview or the identification made therein, her motion would have been successful.

For these reasons, Lemoine has not demonstrated that his counsel acted deficiently or that her failure to have him examined for a bleeding bump altered the outcome of the trial.  Lemoine,

---

[35]Rec. Doc. No. p. 11.

[36]St. Rec. Vol. 1 of 3, Motion to Set Bond, 12/30/09.

therefore, has not established that the state courts' denial or relief was contrary to or an unreasonable application of the *Strickland* standards.[37]  He is not entitled to relief on this issue.

## VIII.  **Expert Testimony (Claim No. 4)**

Broadly construed, Lemoine presents general arguments challenging the practice by prosecutors of presenting expert testimony from CAC personnel to establish that certain symptoms are "consistent with" abuse.  These general arguments suggest that this type of testimony lends credence to and enforces the allegations of abuse in cases where there is no physical evidence, and the testimony is unduly prejudicial to the defense where the witness is without scientific training or expertise.  Lemoine, however, makes no specific arguments as to his case nor did he identify particular testimony or the expert whom he seeks to challenge.  In his reply to the State's opposition, however, he for the first time references the CAC forensic interviewer, Jo Beth Rickels, and the pediatrician, Dr. Danica Head, who testified at his trial and suggests that, without their testimony, the State had insufficient evidence to convict him.

On post-conviction review, the state trial court denied relief noting that Dr. Head, a forensic pediatrician, testified as to the lack of objective physical evidence, such as vaginal tears, on her examination of the victim, and as to her conclusion that such signs would not be found where the sex acts involved Lemoine's tongue and finger.  She did not offer any symptoms "consistent with" abuse testimony like that complained of by Lemoine.  The state trial court also noted that the forensic interviewer, Ms. Rickels, had only offered fact-based testimony and also did not offer the

---

[37]In addition, his claim under *Martinez v. Ryan*, 566 U.S. 1 (2012), and its progeny, that the state courts erred by not providing him an evidentiary hearing on this issue is unavailing.  He has presented no substantial claim of ineffective assistance of counsel nor did the state courts impose a procedural bar to review of his claim, which was disposed of as meritless under *Strickland*.

type of testimony challenged by Lemoine. This order, adopted by the Louisiana Supreme Court, offered the last reasoned statement on the issue. *See Ylst*, 501 U.S. at 802.

Broadly construed, Lemoine challenges the admissibility of the testimony received from Dr. Head and Ms. Rickels on the basis that they gave "consistent with" testimony as evidence that B.Z. was sexually assaulted. The admissibility of testimony, even that of experts, is a matter of state law that is not subject to re-examination by this federal court on habeas review. It is not the province of a federal habeas court to asses a state court's application of state law or determination of state-law questions. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). Instead, "a federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling also violates a specific federal constitutional right or renders the petitioner's trial fundamentally unfair." *Gochicoa v. Johnson*, 118 F.3d 440, 446 (5th Cir. 1997). To do so, the petitioner must demonstrate that the error had a substantial and injurious effect on the jury's verdict in violation of due process. *See Fry v. Pliler*, 551 U.S. 112 (2007); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). A due process violation exists when the wrongfully admitted testimony "played a crucial, critical, and highly significant role in the trial" in a manner that unfairly impacted the jury's verdict. *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998). The question of whether a petitioner's due process rights were violated is a question of law. *Richardson v. Quarterman*, 537 F.3d 466, 472 (5th Cir. 2008).

Thus, to present a federal issue, Lemoine must point to an evidentiary error by the state trial court in allowing the testimony of Dr. Head and Ms. Rickels, and he has not done so. The Court recognizes Lemoine's reliance on *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and related state case law, as a measure for assessing the reliability of the experts' testimony and whether their testimony was properly admitted. As is well-known to this Court, the

Supreme Court in *Daubert* charged trial courts to act as "gatekeeper" to ensure the relevance and reliability of scientific expert testimony. However, the standard on habeas corpus review is not whether the testimony satisfied *Daubert*, but whether the <u>wrongful</u> admission of evidence rendered the trial fundamentally unfair under due process standards. *Milone v. Camp*, 22 F.3d 693, 702 (7th Cir. 1994); *Wilson v. Sirmons*, 536 F.3d 1064, 1101 (10th Cir. 2008); *Williamson v. Ward*, 110 F.3d 1508, 1522-23 (10th Cir. 1997).

Thus, the focus here is on whether the testimony was erroneously admitted. The court can find no mandate that would prevent a state trial court from admitting the testimony of a CAC interviewer or examining pediatrician in a child abuse or rape case. The mere presentation of the evidence, therefore, is not per se error, and Lemoine has failed to establish any other reason that an error occurred when the testimony was presented in his case.

As determined by the state courts, Lemoine's assessment of the testimony given by Dr. Head and Ms. Rickels is factually flawed. Neither witness gave "consistent with" testimony like that challenged by Lemoine. For example, Ms. Rickels was qualified as an expert in forensic interviewing, and she explained the CAC interview process. She made clear that her role was "simply to make sure the child is talked to and try to find out as much information as we can."[38] Her testimony was very specific and factual as to the questions asked and answers given during B.Z.'s interview, which was shown by video in court. She offered no opinion and was not asked about whether she thought B.Z. had been abused or whether B.Z.'s answers were "consistent with" those of an abused child.

As for Dr. Head, who was qualified as an expert in forensic and child abuse pediatrics, the same is true. She offered no opinion as to whether the abuse actually occurred. Dr. Head reported

---

[38] St. Rec. Vol. 4 of 6, Trial Transcript, p. 399 (Jo Beth Rickels), 3/13/12.

her physical findings, or lack thereof, during her examination of B.Z. She indicated that normal findings, i.e. no trauma or physical evidence, as in B.Z.'s case "neither confirms nor negates" that sexual abuse occurred.[39]   Other than two moles indicated on her report, she found no signs of physical abuse and had expected not to find anything based on the type of abuse described and the amount of time that passed since the alleged activity.[40]   At no time did Dr. Head opine, nor was she asked, about whether B.Z.'s behavior, statements, or actions were "consistent with" abuse having actually occurred.

For these reasons, Lemoine has failed to establish any error in the admittance of the testimony from Dr. Head or Ms. Rickels that would have created a due process concern. The testimony was factual in nature and not the sort complained of by Lemoine. Without some showing that the testimony was wrongfully or erroneously admitted, he cannot establish that his trial was rendered unfair.

To the extent Lemoine also contends that the testimony should not have been believed in light of his claim that he did not abuse B.Z., his argument also must fail on habeas review. Once the testimony of an expert is properly admitted, it is for the jury to resolve the credibility and the reliability of the expert's testimony. As previously addressed, it is not the role of a federal habeas court to assess the credibility of witness testimony. *Accord Schlup v. Delo*, 513 U.S. 298, 330 (1995) (". . .the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez*, 398 F.3d at 695 ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); *McCowin v. Scott*, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); *Phillips v. Cain*, No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11,

---

[39]*Id.*, at 429 (Dr. Danica Head).

[40]*Id.*, at 438, 440, 444 (Dr. Head).

2012), *adopted*, 2012 WL 2565025, at *1 (E.D. La. July 2, 2012); *Picou v. Cain*, No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

For these reasons, Lemoine has failed to establish that the state courts' denial of relief on this issue was contrary to or an unreasonable application of federal law. He is not entitled to relief on this issue.

## IX.   **Prosecutorial Misconduct (Claim No. 5)**

Lemoine asserts that the State committed prosecutorial misconduct during rebuttal closing argument when the prosecutor described him as a "pervert," "child molester," and "rapist." The State contends that Lemoine has not demonstrated that the denial of relief was contrary to or an unreasonable application of federal law.

On post-conviction review, the state trial court held that the prosecutor's remarks did not mischaracterize the evidence or improper influence the jury. This was the last reasoned opinion from the state courts, as adopted by the Louisiana Supreme Court. *Ylst*, 501 U.S. at 802.

For purposes of federal habeas, a claim of prosecutorial misconduct presents a mixed question of law and fact. *Brazley v. Cain*, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002). The court must determine whether the denial of relief was contrary to or an unreasonable application of Supreme Court law.

A prosecutor's comment does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the trial was rendered fundamentally unfair in violation of the Due Process Clause. *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)

26

(citations and quotations omitted); *accord Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988); *Bell v. Lynaugh*, 828 F.2d 1085, 1095 (5th Cir. 1987). The prosecutor's remarks must be evaluated in the context of the entire trial. *Greer v. Miller*, 483 U.S. 756, 765-66 (1987) (citing *Darden*, 477 U.S. at 179); *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985).

A two-step analysis is utilized when reviewing claims of prosecutorial misconduct. *United States v. Wise*, 221 F.3d 140, 152 (5th Cir. 2000); *United States v. Lankford*, 196 F.3d 563, 574 (5th Cir. 1999). First, the court must determine whether the prosecutor made an improper remark. *Wise*, 221 F.3d at 152. It is well settled that the prosecution may permissibly argue to the jury the "inferences and conclusions" that it should draw from the evidence, so long as the assertions are based on the evidence. *United States v. Delgado*, 672 F.3d 320, 336 (5th Cir. 2012) (citations omitted). "Moreover, 'unflattering characterizations of a defendant will not provoke a reversal when such descriptions are supported by the evidence.'" *Delgado*, 672 F.3d at 336, (quoting *United States v. Windom*, 510 F.2d 989, 994 (5th Cir. 1975) (finding no error in a prosecutor's reference to a defendant as a "con artist").

If the court finds that an improper remark was made, "the second step is to evaluate whether the remark affected the substantial rights of the defendant." *Wise*, 221 F.3d at 152. A habeas corpus petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Jones*, 864 F.2d at 356; *accord Hogue v. Scott*, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994). Under this test, a petitioner must demonstrate that the comment rendered his trial "fundamentally unfair" by showing "a reasonable probability that the verdict might have been different had the trial been properly conducted." *Rogers*, 848 F.2d at 609 (footnote and citations omitted).

The transcript includes several statements by the prosecutor during rebuttal closing arguments that form the basis of Lemoine's claim. In describing the reactions of Lemoine's sister (B.Z.'s mother) to the allegations of rape, the prosecutor stated, "No matter how painful it is to acknowledge the reality that there is a child molester in your family and that that [sic] is a child molester that molested someone else in your family."[41] Later, the prosecutor interpreted Lemoine's letter from prison as conveying the thought that Lemoine "staggeringly refuse[s] to accept responsibility for that fact that [he's] a sick pervert who licks little girls' vaginas."[42] Referring to the same letters, the prosecutor later commented: "He just doesn't have the gall to admit. Of course he doesn't, he's a child molester, a rapist."[43]

The comments did not raise objections from the defense at trial. Nevertheless, in denying Lemoine relief, the state trial court held that the references were not improper under the wide latitude given to prosecutors under state law during closing arguments stating, "Someone who commits aggravated rape is a rapist. Someone who commits sexual abuse of a child is a child molester. Someone who commits sexual abuse of a small child who is a family member would be committing a perverted act."[44] The state court found the characterizations to have been based on the law and facts of the case, therefore not improper.

As noted above, even under federal law, unflattering and derogatory comments like those made here are not improper when they are supported by the evidence. *See Delgado*, 672 F.3d at 336. As detailed previously, the evidence at trial sufficiently established that Lemoine committed

---

[41]St. Rec. Vol. 5 of 6, Trial Transcript, p. 551, 3/14/12.

[42]*Id*., at 553.

[43]*Id*., at 556.

[44]St. Rec. Vol. 1 of 6, Trial Court Judgment, p. 8, 9/21/15.

perverted acts of child molestation when he raped his niece with his tongue and finger and had her sit on his exposed penis. The comments were derivative of the trial evidence. Lemoine has not established that the prosecutor's comments were improper, and therefore cannot establish that the comments rendered his trial fundamentally unfair.

For these reasons, the state courts' denial of relief was not contrary to or an unreasonable application of state law. He is not entitled to relief on this issue.

## X.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Joseph Lemoine's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[45]

New Orleans, Louisiana, this 15th day of March, 2018.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[45]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.